Jones, J.
Since the insured had made payments for more than three years after the policy was issued, and at the time of his death and default of further payments had paid a sufficient sum into the reserve fund, the insurance company concedes its liability, but maintains that it is limited to the amount provided in its second option settlement found in the policy. The terms of this policy provided that if a lapse occurred after the full three years’ premiums had been paid, the owner on surrender within three months from the due-date of premium in default was entitled to either of the three options named in the policy; that if the owner within such three months failed to exercise either of said options the insurance should be continued for the reduced amount of paid-up insurance as provided in the second option.
The chief question argued in this case, and which must be determined by this court, is whether this, insurance company was authorized by the laws of this *594 state to issue a policy containing the optional provisions quoted. If it had such authority, its liability is limited under the conceded facts to the reduced amount of non-participating paid-up insurance found in the second option. If it had no such legal authority to embody the optional settlement terms found in its policy contract, but is bound by the optional provisions stipulated for standard policies in Section 9412, General Code, it must be likewise conceded that under the provisions of that section, since the owner failed to surrender his policy after default, his insurance would be continued as provided in option (b) of the foregoing section of the General Code, which gives the owner the right to have the insurance continued in force, for its full amount for a limited term without future participation, etc. These provisions are found in what is denominated by the statute as a standard form, and so far as they are germane here, are as follows:
“After this policy shall have been in force three full years the owner, within one month after any default, may elect (a) to accept the value of this policy in cash, or (b) to have the insurance continued in force from date of default, without future participation and without the right to loans, for its face amount, including any outstanding dividend additions, less any indebtedness to the company hereon, or (c) to purchase non-participating paid up insurance, payable at the same time and on the same conditions as this policy * * *. If the owner shall not, within one month from default, surrender this policy to the company at its home office for a cash surrender value or for paid up insurance as provided in options (a) and (c), the insurance will be continued as provided in option (b).”
*595 It is claimed by tbe plaintiff in error that these provisions of the statute became part of the insurance contract, and that, on default of the insured, the law itself exercised in her behalf the option to have the insurance continued in force for its full amount from the date of default of premium payment. The crux of this argument is based upon Section 9410, General Code, which provides that no policy of life insurance shall be issued in this state unless authorized by the provisions of that chapter. It is therefore necessary to examine the various provisions of the code in the chapter stated in order to determine whether the company had power to incorporate in its policy the optional settlements therein contained. Broadly speaking, it is the contention of the plaintiff in error that the insurance company can provide for no methods of optional settlement except such as are found in the standard forms embodied in Sections 9412 to 9417, General Code, both inclusive. Is that contention tenable in view of our various code provisions relating to standard and non-standard forms of insurance? Those sections were originally enacted in 99 Ohio Laws, 139-174, under the following title: “An Act establishing standard forms in which policies of life insurance may be issued in this state and in which policies of life insurance companies organized under the laws of this state may be issued; and regulating the conditions and provisions to be contained in policies of life insurance companies that do not adopt such standard forms.”
It is manifest from this title that the state did not intend to provide that all insurance policies issued in this state should be of a standard form, for the title expressly provides for the regulation of pro *596 visions to be contained in insurance policies “that do not adopt such standard forms.” As will be seen from an examination of Sections 9412 to 9417, General Code, the state has prescribed and established in haec verbae six separate standard forms in which policies of life insurance may be issued in this state (Section 9411, General Code). It is obvious that the state did not intend to restrict life insurance companies to the issue of the standard forms named, because in the same act which provides for such standard forms it made definite provision for the issuance of policies on forms other than standard. Under the sub-head, “policies other than standard forms,” it is provided in Section 9420, General Code, that no life insurance policies in form other than standard shall be issued unless the same contain thirteen separate and specific provisions therein specified, and in the following section, Section 9421, General Code, it is provided that no life insurance policy, in form other than standard, shall be issued by a life insurance company if it contains any of the four definite and specific provisions provided in that section. From a reading of the two sections named it will be readily seen that not only by the title of the original act, but by the expression of a legislative intention in the sections named, the insurance act recognized the authority of life insurance companies to issue nonstandard policies, provided they contained the thirteen specific provisions named in Section 9420, General Code, and excluded the four provisions in the section following. This view was taken in the case of Western & Southern Life Ins. Co. v. Horn, 100 Ohio St., 478.
*597 This view is also supported by the language used in Section 9420 (8), G-eneral Code, which authorized policies other than standard to be issued, provided, in default of further premium, the insurance company should secure to the owner of the policy a certain stipulated form of insurance, the net value of which should be equal to the reserve at the date of default. Here is found legislation touching the gist of this action and pertaining exclusively to nonstandard forms. It is manifest that the state was content, in non-standard forms, to require provisions for a “stipulated form” of insurance for a net reserve or cash surrender value; it is notable that nothing was therein provided as to the automatio or any other exercise of optional surrender in case of premium default. In that respect no legislative requirement was made, thus evincing an intention to leave that feature to be provided for in the contract of insurance, as was done here. Landis had paid his three years’ premiums, and within three months from the date of default on June 24,1918, he might have exercised his option for extended term insurance for a limited period. Knowing the state of his own health, it might advantage him to elect the option providing for the reduced amount of nonparticipating paid-up insurance. And if the insured had died more than five years and two months after premium default (the time his extended term insurance would run), it would then advantage the beneficiary to claim the reduced amount of paid-up insurance, secured by the policy contract. It is probable that this feature of the case caused the legislature to ignore altogether the automatic option requirement in non-standard form policies.
*598 We are therefore of the opinion that, under the provisions of the insurance law, non-standard forms of policies embodying the settlement options contained in the present policy were authorized to be issued in this state, leaving to the insurance company and the insured the right of mutual contract with regard to the manner of optional settlements that should be made and given to the owner in case of his default of premium payment.
Some reliance is had by plaintiff in error upon the provision of subdivision (4) of Section 9421, General Code,, which provides that no life insurance policy shall be issued in this state which contains a provision for “any mode of settlement at maturity of less value than the amount insured on the face of the policy,” etc. That feature of the law does not affect this case, for this was not a settlement at maturity of a policy. Furthermore the argument advanced leads to a reductio ad dbsurdum, since it would deny the right of settlement by acceptance of a cash surrender value under the optional clauses contained either in a standard or non-standard policy. The section last quoted applies to policies payable at maturity and not to optional settlements upon surrender after premium default, until after the option has been exercised and the face value fixed anew.
The foregoing was the main legal question presented. Other questions arising upon the facts were also presented and disposed of by the court of appeals. No error was committed by that court and its judgment will be affirmed. The cause is remanded to the common pleas court for further proceedings according to law.

*599
Judgment affirmed.

Marshall, C. J., Johnson, Hough, Wanamaker, Robinson and Matthias, JJ., concur.